My name is Justice Michael B. Hyman. With me is Justice Pierce and Justice Mary Ellen Coughlin. Would you please identify yourselves, if you would? Certainly. I'm Jennifer Bontrager from the State Appellate Defender for Appellant Darius Kimbrough. Can you hear me now? Yes. Okay. It's Attorney Kim Ellen Chamberlain. All right. Thank you very much. Nope. Don't worry about the picture. We all have, under this new regime, we always have some difficulties. It's difficult. Welcome, both of you. You each have 20 minutes. Ms. Bontrager, you may want to reserve some of your time for rebuttal. We will let you talk. We may go over, depending on the number of questions we have. We do interrupt. Please finish your thought and then try to respond to our questions. We try to do it as if we were in court. Okay. Great. Ms. Bontrager? Thank you. Good afternoon, Your Honors, and may it please the court. Again, I'm Jennifer Bontrager for Darius Kimbrough. Your Honors, I imagined we'd be second issue in the briefs today, given that it is a rather unusual issue. But of course, I'm here for whatever questions you have, and I would like to reserve a few minutes of my time for rebuttal. On that second issue, Darius was charged with showing a video to MG depicting fellatio and then twice placing his penis in her mouth. The state was allowed to introduce screenshots of pornographic videos stored on Darius's phone, as well as several searches that he ran on a porn website. And we're not talking about a single image or a single search here. The state was allowed to introduce seven still photos, or I'm sorry, seven stills from videos and 12 searches. These were graphic images and many of the searches used vulgar terms. My understanding is that those images all were on his phone from the same day. From the day before and also that same day. That's correct. That's correct. So the day before and the day of, what's wrong with that? They're not, I don't think they're at all relevant to the predatory charges. I will agree that perhaps one of the stills from the videos may have been relevant to the grooming charge, but they're not at all relevant to the predatory charges. They weren't searches for child pornography and they were all, while again, some of them involved, some of the search terms were for vulgar, using vulgar terms. They're not, they didn't involve children. And I think there's a fundamental difference between oral sex with a consenting adult and oral sex or attempted oral sex with a five-year-old child. So this was highly prejudicial in a case where this was essentially a credibility contest between Darius's version of the events and MG's version of the events. But they both, what you just said is, it was oral sex is a charge, you know, the offense, and that's what he was looking at. That's what the pictures depicted. Some of the pictures, I mean, some of the still videos did depict oral sex, but again, between consenting adults, not with a five-year-old child. Why does that, why would that make the difference? Why must it be with a child? If he had something on his mind during the 24 hours before and a day of, why would that matter? Because- Why would that matter in your opinion? Because it's fundamentally different with a consenting adult versus with a child. One is a legal act, one is a crime. And the case law requires particularity when introducing evidence of other sexual images or sexual searches. The Pilo case that was cited in the briefs, requires peculiarity. Oral sex is a broader umbrella, but with consenting adults, between consenting adults versus with a child are just fundamentally different things, Your Honor. And again, this was a credibility contest. And so it mattered, you know, pornography is one of those things, Your Honors, that while in many forms is legal, a lot of people nevertheless have strong opinions or moral objections to. So this evidence undoubtedly affected the jury when, you know, when weighing who's credible, who's more reliable. And we know that they did, the jury did have some question about MG's reliability because they acquitted Darius on one of the counts of predatory criminal sexual assaults. And that makes sense because again, this was a credibility contest. MG's story has problems. She was inconsistent. She was unsuggestible. For example, she agreed that she bit down while it was happening only after her mother suggested that she would have bitten down. Only then did MG say that she had in fact bitten. She also identified someone else as the perpetrator until her mom whispered in her ear. And only then did she point to Darius when there was the family confrontation. Darius gave a consistent account, consistently denied even taking his penis out of his pants in MG's presence at all. There's also animosity between Darius and MG's mother. So there's some motive to lie or fabricate there as well. Now, all that was brought to the jury's attention, correct? Certainly, Your Honor. And the jury... And wouldn't it be within the jury's province to reconcile those differences or inconsistencies or different versions of events? Isn't that up to the jury to do that? Why would we have to get involved with that? Well, I mean, of course, it's up to the jury. And we did raise a sufficiency argument as well. But as far as whether the introduction of these numerous stills and searches were harmless, whether they affected the jury's determination, that is absolutely a relevant inquiry here, Your Honor. Well, how do we know that it did? I don't see how it couldn't have, Your Honor. There were so many of them. There were seven still images, 12 searches, all with some degree of vulgarity involved in them and pornography being something that people often have strong moral objections to or at least strong opinions about. Wasn't there a lot more evidence, though, that the judge kept out? I mean, you keep saying seven as if that's an extremely high number. But in view of the totality of what they had, it really wasn't, was it? I mean, I think seven is at least six more than the jury should have seen. There was more evidence on his phone that the state sought. They sought to introduce 20 images and 30 searches. Isn't that within the judge's discretion to look at how many, at the totality of the evidence and fashion what he thinks is reasonable? And it seems like that was legitimately done in this case. I mean, the judge did exercise some discretion. I still think he abused it in how much he allowed the state to introduce. How much if they would have introduced everything? How much are we talking about? 20 images and 30 searches. So it was cut down significantly, wasn't it? It was cut down some, but considering that MG said she saw a single video, I don't think anything more than a single video was relevant. I think anything more than a single video still was an abuse of that discretion, especially when he's searching for what was alleged to have happened here. Instead, this is just to make him look like a bad person to essentially serve as propensity evidence. So you don't attach any significance to the fact that this was a depiction of oral sex? Only, again, only for the limited purpose as it related to what MG claimed she saw as to the grooming charge, but for the predatory charges, no. The fact that some of the searches were for oral sex, that some of the pictures depicted oral sex, they're oral sex with a consenting adult. They're not with a child. And I think to be relevant to anything, they needed to have been what was sought to happen here. And that's just fundamentally different, five-year-old versus- But they do relate to what has happened here. It's to the act. I mean, only to the grooming. I don't think to the predatory. I don't think those are relevant. Well, that's what you think, but it is in the discretion of the court. And so what, besides Palo, I mean, is there anything that you think that we need to rely on, I mean, that supports you? I mean, certainly Palo is the defining, is the only other case that I found with sex images and dissimilar versus peculiar to exactly what was going on there. But also, I mean, this court, as far as issues that are likely to distract the jury from what happened, in Ehlert, this court held that a victim previous, I'm sorry, a defendant previously having an abortion was irrelevant to whether she killed her newborn child. That's, again, something that people have strong moral objections to, whether it was legal at the time. That's a far greater difference than what we have here. When it began into a political issue, this is not a political issue. This was within a relevant timeframe of a relevant act that occurred. I mean, it was about what you're saying about 15%, less than 15% of the total images and searches. I'm not quite fast enough to do that percentage math in my head, Your Honor. I'm sorry. If 50, you said 30 and 20 is 50, and we have six images, seven images? That's 15%. Well, I mean, if you're adding the 20 images and 30 searches, here we have seven images and 12 searches. So I think it's... Okay. So there it would be 40%, but you're not complaining about the searches, you're complaining about the images. No, I'm complaining about both. I think all of that was irrelevant to whether he attempted to place his penis in MD's mouth at all. Wouldn't it have been a lot worse if the judge had allowed the state to play the entire video? And wasn't that an exercise, a proper exercise of the court's discretion to not allow that? I don't recall that the state sought to show all of the videos in their entirety. I thought they were simply... No, but I'm saying that they could have been. You may be right, but that wasn't done. That certainly could have been... The whole video could have been shown to the jury. I mean, it just seems to me like this was tailored pretty specifically and narrowly. Am I missing something? I don't think it was narrowly tailored at all. Not all of the images that were shown to the jury depicted oral sex and not all of the searches shown to the jury were requests to look at oral sex. There were also searches for just black women videos. There were new porn videos. It wasn't tailored specifically to... I mean, I think to truly be tailored, it would have to be searches for child pornography as opposed to simply oral sex, but they weren't even tailored only to oral sex in this case. So no, I don't think that was an adequate exercise. So you believe that they would have to be depicting oral sex with a child to be admissible and relevant? Yes, Your Honor. And I think PILO supports that. And I mean, otherwise saying that someone having watched porn on their phone and later engaging in a crime, that seems like a stretch. Legal pornography versus a crime. Well, when you're dealing with a five-year-old, conveying a depiction of an act that you want the child to see, what difference does it make if the act is being performed or depicted by adults for an adult and a child? It's there have to be a distinction there? I mean, I think that's what would make it relevant, Your Honor, is if it depicts what the defendant was actually aiming at successfully having happen. I think it needs to depict exactly what he's looking to have happen. And since he's showing it to a five-year-old, I think it needs to depict at least a child as opposed to a grown adult. And I think PILO supports that. If it was a white male with a black five-year-old, that wouldn't be relevant because it's not a black male and a black five-year-old. I mean, it's the act. It's the depiction of this is what the evidence indicates the defendant wanted the five-year-old to do or to copy or to mimic. What if it was a cartoon? Would that be irrelevant? If it's a cartoon depicting an adult and a child, probably not for the grooming charge, but I still think it's irrelevant for the predatory charge. So are you suggesting there should have been a severance of the charges? How would you separate it out? It was one transaction. I think the jury should have received a limiting instruction that they could consider. And again, I think there should have been only one still shown to the jury. I think that should have been limited to the grooming charge. Did you raise that issue on appeal? No, I did not. Okay. Well, I mean, interesting point, but it's not before us. No, I mean, in the context of this argument that I did raise, though, I did acknowledge that a single image depicting fellatio may have been relevant to the grooming charge. But my argument was largely that they are all irrelevant to the charge. But the issue isn't what you think. The issue is whether the judge abused his discretion. Correct. And my argument is that he did abuse his discretion in allowing the jury to see so many prejudicial, inflammatory... When you say so many, you're talking about seven. Seven images, 12 searches. I do appear to be running short on time, though, Your Honors. If you had other questions, I'm happy to take them. Otherwise, I'd like to reserve a couple minutes for rebuttal. Okay. Thank you very much. Ms. Chamberlain? May I please support, Your Honors? I believe that it's the act itself, the fellatio act that is relevant here. Every one of the screenshots is of fellatio. The defendant tells the victim in this case, do what the lady is doing in the video. He's showing that video to her to tell her how to perform the fellatio on him, which is the other pictures. Well, we don't... Wouldn't one be enough? Well, 404B does not require a specific number of other crimes acts or other bad acts. There's no magic number. But there could be a point at which it becomes prejudicial. And that's the question here is, at what point is it prejudicial? Was that prejudicial? Would all 20 of them be prejudicial? Well, what Pilo is saying is whether or not the jury would have acquitted except for all of these images. The evidence in this case was overwhelming. You had a little girl who was sleeping in the living room with Jaquan. Jaquan sees the defendant come in and take her into the kitchen. Then Jaquan sees the defendant holding a phone horizontally. There's a difference of opinions whether it was overwhelming or not. But I mean, you made that argument in your briefs. Right. But he sees the crime. He knows that something's going on. He walks into the kitchen. He goes out onto the porch. Six minutes later, the victim comes out and she outcries immediately. She outcries and says Darius did this to her. She says Darius made me watch a video of a woman doing something to a man. And then she says that he put something big and long and fat into her mouth. It was immediate. So you already have the name. And she also said that the defendant told her don't bite it. So the mom is not influencing anything because the mom was not present during that conversation. It was just Jaquan. Jaquan then goes to the mother and says I think something happened with the victim. The mother starts asking the victim and she's asking the victim different questions. So she's getting more detail. And then after that, they go to the cat where she shuts down again and then writes a note. And in that note, she's again saying that the defendant's brother was nasty to her and put his private parts in her mouth. So the mom is not in any way in any way suggesting to the victim who did what and what he So I think you have to look at what happened on the porch with Jaquan. So Ms. Chamberlain, why is seven photos not an abuse of discretion? Because they were originally videotaped. The videotapes were then whittled down to a single screenshot of the act of fellatio. We don't know on that phone, there was a lot of information on that phone, exactly which video was shown to the victim. We also know that the defendant was planning this because he had so many videos of fellatio. He knew that the victim was going to be there. He knew he had to show her because he can't tell her how to perform fellatio. So he just picked just one, then the defense could say that is not the one that was shown to the victim. How do we know that is the exact one? We're not showing it that that is the exact one. We're showing it as 404B evidence of his intent and his planning to commit the predatory criminal sexual assault by grooming her using that evidence. And that that evidence was on the phone on the day of the incident. Any other questions? Any else you wish to add? We'll stand on our brief for any of the other arguments. Thank you very much. Just a couple brief points, your honors. One, not all of those stills depicted oral sex. At least one of them depicted two, a man and a woman standing together and the man touching the woman, but there was no oral sex depicted on that. MG did not identify any of the video stills or videos on Darius's phone as the one she saw at all. And finally, there is no evidence that Darius engaged in any extensive planning of this. He was he spent the night at that home unexpectedly. He had just gotten up. So there is really no evidence of any premeditation on his part. That was all unless your honors had questions. Thank you very much. We appreciate your briefs and your arguments this afternoon, and we'll take the case under advisement.